**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**Appeal No. 22-5281**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN OVERSIGHT,

*Plaintiff-Appellant,*

---v.---

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and
OFFICE OF MANAGEMENT AND BUDGET,

*Defendants-Appellees.*

Appeal from the United States District Court for the District of Columbia
Hon. Emmet G. Sullivan, Case No. 1:17-cv-00827-EGS

**BRIEF OF AMICUS CURIAE THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS IN SUPPORT OF PLAINTIFF-APPELLANT
SEEKING REVERSAL**

Bruce D. Brown
    *Counsel of Record*
Katie Townsend
Adam A. Marshall
Shawn Musgrave*
REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
bruce.brown@rcfp.org
*Counsel for Amicus Curiae*
* Of counsel

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>
## <u>PURSUANT TO CIRCUIT RULE 28(a)(1)</u>

Pursuant to Circuit Rule 28(a)(1), amicus curiae certifies as follows:

     A.    <u>Parties and Amicus</u>.

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Plaintiff-Appellant, except for Citizens for Responsibility and Ethics in Washington, which filed an amicus brief in this Court.

     B.    <u>Rulings</u>.

References to the rulings at issue appear in the Plaintiff-Appellant's brief.

     C.    <u>Related Cases</u>.

To the knowledge of amicus' counsel, there are no other cases within the meaning of Circuit Rule 28(a)(1)(C).

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, amicus curiae certifies as follows:

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

## RULE 29(a)(4)(E) CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amicus certifies that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than amicus, its members, or counsel—contributed money that was intended to fund preparing or submitting the brief.

## CERTIFICATE REGARDING SEPARATE BRIEFING

Pursuant to Circuit Rule 29(d), amicus certifies that this brief is necessary to provide the perspective of media organizations and journalists.  Amicus has an interest in ensuring FOIA is interpreted in a manner that is consistent with the plain text and the purpose of the Act, including the narrow exemptions Congress enacted for certain categories of records.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES
PURSUANT TO CIRCUIT RULE 28(a)(1) ............................................................ ii

CORPORATE DISCLOSURE STATEMENT ....................................................... iii

RULE 29(a)(4)(E) CERTIFICATION ................................................................... iv

CERTIFICATE REGARDING SEPARATE BRIEFING...................................... iv

TABLE OF AUTHORITIES ................................................................................. vi

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE ......... 1

SUMMARY OF ARGUMENT ............................................................................... 2

ARGUMENT.......................................................................................................... 5

I.      The "consultant corollary" doctrine has been superseded by Supreme
        Court precedent establishing that the plain text of FOIA's exemptions
        controls. ...................................................................................................... 5

        A.      The origins of the judicially created doctrine are unmoored
                from Exemption 5's plain text.......................................................... 5

        B.      Decisions in this Circuit post-*Klamath* have created confusing
                and contradictory tests..................................................................... 8

        C.      The "consultant corollary" doctrine is incompatible with the
                plain text of Exemption 5. ............................................................. 14

II.     Even if the "consultant corollary" remains viable, it does not
        encompass communications between agencies and Congress. .................... 17

CONCLUSION..................................................................................................... 22

CERTIFICATE OF COMPLIANCE..................................................................... 23

CERTIFICATE OF SERVICE ............................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*,
    380 F. Supp. 3d 45 (D.D.C. 2019).......................................................... 11, 12, 20

*Am. Oversight v. U.S. Dep't of Treasury*,
    474 F. Supp. 3d 251 (D.D.C. 2020).................................................................. 14

*Am. Oversight v. U.S. Dep't of Transp.*,
    No. CV 18-1272 (CKK), 2022 WL 103306 (D.D.C. Jan. 11, 2022)................. 10

*Am. Oversight, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    No. CV-17-827(EGS/DAR), 2022 WL 1719001
    (D.D.C. May 27, 2022).............................................................. 9, 10, 11, 12, 13

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*,
    161 F. Supp. 3d 120 (D.D.C.),
    *modified*, 185 F. Supp. 3d 26 (D.D.C. 2016)................................................ 11, 13

*COMPTEL v. FCC*,
    910 F. Supp. 2d 100 (D.D.C. 2012).................................................................. 10

*Ctr. for Int'l Env't L. v. Off. of U.S. Trade Representative*,
    237 F. Supp. 2d 17 (D.D.C. 2002).................................................................... 11

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001)........................................................... 2, 8, 9, 10, 11, 12, 19, 20

*Dow Jones & Co. v. Dep't of Just.*,
    917 F.2d 571 (D.C. Cir. 1990)..................................................................... 13, 19

*Food Mktg. Inst. v. Argus Leader Media*,
    139 S. Ct. 2356 (2019).......................................................... 3, 5, 6, 14, 15, 16, 18

*Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*,
    889 F.2d 1118 (D.C. Cir. 1989)................................................................ 7, 12, 16

*In re Sealed Case*,
    352 F.3d 409 (D.C. Cir. 2003)........................................................................ 16

*Jud. Watch, Inc. v. Dep't of Energy*,
  412 F.3d 125 (D.C. Cir. 2005) ................................................................ 14

*Jud. Watch, Inc. v. U.S. Dep't of State*,
  306 F. Supp. 3d 97 (D.D.C. 2018) .......................................................... 12

*Jud. Watch, Inc. v. U.S. Dep't of Transp.*,
  950 F. Supp. 2d 213 (D.D.C. 2013) ..................................................... 8, 13

*Lawyers' Comm. for C.R. Under L. v. U.S. Dep't of Just.*,
  No. 18-CV-167 (EGS/GMH), 2020 WL 7319365 (D.D.C. Oct. 16, 2020),
  *report and recommendation adopted*, No. 18-CV-167 (EGS/GMH),
  2021 WL 1197730 (D.D.C. Mar. 30, 2021) .......................................... 10

*Lucaj v. Fed. Bureau of Investigation*,
  852 F.3d 541 (6th Cir. 2017) .................................................................... 9

*McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*,
  647 F.3d 331 (D.C. Cir. 2011) ..................................................... 13, 14, 15

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011) ................................................... 3, 5, 15, 16, 18

*Nat'l Inst. of Mil. Just. v. Dep't of Def.*,
  No. 06-5242, 2008 WL 1990366 (D.C. Cir. Apr. 30, 2008) ................... 9

*Nat'l Inst. of Mil. Just. v. U.S. Dep't of Def.*,
  512 F.3d 677 (D.C. Cir. 2008) ............................... 6, 9, 12, 13, 15, 21

*Nat'l Parks & Conservation Ass'n v. Morton*,
  498 F.2d 765 (D.C. Cir. 1974) .................................................................. 5

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water
  Comm'n*,
  740 F.3d 195 (D.C. Cir. 2014) ........................................................ 15, 16

*Rojas v. Fed. Aviation Admin.*,
  989 F.3d 666 (9th Cir. 2021),
  *cert. denied*, 211 L. Ed. 2d 472, 142 S. Ct. 753 (2022) ............... 6, 7, 9, 10

*Ryan v. Dep't of Just.*,
  617 F.2d 781 (D.C. Cir. 1980) ....................................................... 7, 16, 18

vii

*Soucie v. David*,
    448 F.2d 1067 (D.C. Cir. 1971) ..................................................... 7, 15

*Trump v. Mazars USA, LLP*,
    140 S. Ct. 2019 (2020) ................................................................... 20

*U.S. Dep't of Just. v. Julian*,
    486 U.S. 1 (1988) ........................................................................ 8, 15

**Statutes**

5 U.S.C. § 551(1) ................................................................................ 6

5 U.S.C. § 551(1)(A) ....................................................................... 4, 17

5 U.S.C. § 552 ..................................................................................... 1

5 U.S.C. § 552(b)(4) ........................................................................... 6

5 U.S.C. § 552(b)(5) ............................................................ 3, 6, 15, 17

5 U.S.C. § 552(b)(7) ........................................................................... 6

5 U.S.C. § 552(f)(1) ..................................................................... 4, 6, 17

5 U.S.C. § 552(f)(2) ........................................................................... 17

Pub. L. No. 93-502, 88 Stat. 1561 (1974),
    *available at* https://perma.cc/N5M6-VFX7 ......................................... 7

**Constitutional Provisions**

U.S. Const. art. II ............................................................................... 20

U.S. Const. art. I ................................................................................ 20

**Other Authorities**

Black's Law Dictionary (Rev. 4th ed. 1968) ............................................ 6

Webster's Seventh New Collegiate Dictionary (1961) ............................... 6

The Federalist No. 51 (James Madison) ................................................. 20

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

Amicus curiae is the Reporters Committee for Freedom of the Press (the "Reporters Committee").  Plaintiff-Appellant American Oversight consents to the filing of this brief.  Defendants-Appellees United States Department of Health and Human Services and Office of Management and Budget do not object to the filing of this brief.[1]  *See* Fed. R. App. P. 29(a)(2); Cir. R. 29(b).

The Reporters Committee is an unincorporated nonprofit association founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources.  Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.  Members of the media, including the Reporters Committee, frequently rely on the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, to report on matters of public interest and to shed light on the activities of government.  Accordingly, the Reporters Committee has an interest in ensuring FOIA is interpreted in a manner that is consistent with the plain text and purpose of the Act.

---

[1]     Intervenor-Defendant-Appellee Committee on Ways and Means of the U.S. House of Representatives has indicated they are not participating in this appeal. *See* Doc. No. 1980279, Mot. to Withdraw as Counsel, at 2.

## SUMMARY OF ARGUMENT

Some products of the 1970s—Star Wars, ABBA, carrot cake—have stood the test of time. Others—the Pinto, carpeted bathrooms, and the Watergate salad—have been left to history. The "consultant corollary" doctrine, which originated in a 1971 decision from this Court, is among the latter. *Amicus* Reporters Committee respectfully submits that this Court should recognize that the "consultant corollary" doctrine is contrary to the plain text of FOIA and has been superseded by recent Supreme Court decisions, or at the very least, that it does not apply to communications between Congress and the executive branch. For the reasons herein, *amicus* urges the Court to reverse the district court's contrary decision.

Pursuant to the "consultant corollary" doctrine, some courts have treated some third-party communications with agencies as "intra-agency" records for the purpose of applying FOIA's Exemption 5 (at least some of the time). The concept emerged from a desire to shield such communications from the public so that (as the argument goes) agencies' deliberations and the quality of their decisionmaking are not degraded. Thirty years after the emergence of the "consultant corollary" doctrine, a unanimous Supreme Court—while noting that "some Courts of Appeals" had adopted the doctrine—explicitly declined to recognize its viability. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001)

("*Klamath*") (assuming, without deciding, that the "consultant corollary" doctrine exists, and holding that the records at issue did not qualify for protection).

Since *Klamath*, and since the last time this Court considered the viability of the "consultant corollary" doctrine, the Supreme Court has issued two decisions rejecting longstanding judicial interpretations of the Act's exemptions that "muddy [FOIA's] clear statutory language." *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) (overruling the so-called "High 2" interpretation of Exemption 2); *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (overruling judicial interpretations of Exemption 4). And that superseding Supreme Court FOIA jurisprudence makes clear that—because the "consultant corollary" doctrine conflicts with the plain text of Exemption 5, which applies only to "inter-agency or intra-agency" records, 5 U.S.C. § 552(b)(5)—it is no longer viable. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. Where . . . that examination yields a clear answer, judges must stop." *Food Mktg. Inst.*, 139 S. Ct. at 2364 (citations omitted).

The "consultant corollary" doctrine has yielded a body of contradictory and confusing caselaw, including the district court's opinion in this case. Courts within this Circuit have struggled to identify the proper test, and differed as to how it should be applied, resulting in a doctrinal morass wholly untethered to FOIA's

3

plain text.  The far better approach—which also is consistent with the requirement that Exemption 5 be interpreted narrowly, and in favor of the public's right to know—is for the Court to recognize that the doctrine is no longer good law.

But even if the "consultant corollary" doctrine remains viable in some form, at the very least, it cannot encompass communications with members of Congress or their staff.  This would pose a clear, irreconcilable conflict with the plain language of the Act, which expressly defines "agency" to <u>exclude</u> Congress.  5 U.S.C. § 552(f)(1); *id.* § 551(1)(A).  Notwithstanding the confusing nature of the caselaw applying the doctrine and the lack of clarity as to its scope, shoehorning Congress into FOIA's definition of an executive branch "agency" is outside the bounds of any proper application of the rules of statutory interpretation.

For the reasons herein, the Reporters Committee urges the Court to reverse the district court's order granting summary judgment in favor of Plaintiff-Appellant as to Defendants-Appellees' Exemption 5 withholdings.[2]

---

[2]     The Reporters Committee takes no position on any issue in this appeal that is not expressly addressed herein.

# ARGUMENT

**I.    The "consultant corollary" doctrine has been superseded by Supreme Court precedent establishing that the plain text of FOIA's exemptions controls.**

    A.    <u>The origins of the judicially created doctrine are unmoored from Exemption 5's plain text.</u>

An interpretation of the scope of a FOIA exemption must start with the plain text of the statute; if the statutory language yields a clear result, that is the end of the inquiry.  The Supreme Court has clearly so held in recent years.  In *Milner*, the Court overturned longstanding decisions of this Court and other circuits that had adopted a broad atextual interpretation of Exemption 2, noting that those decisions had improperly elevated considerations about FOIA's "overall design" and "common sense," 562 U.S. at 566 (citation omitted), above the statute's plain text, *id.* at 569.  More recently, in *Food Marketing Institute*, the Supreme Court overturned decades of this Court's precedent interpreting Exemption 4, which interpreted "confidential" as requiring a showing that "disclosure of the information is likely . . . (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  139 S. Ct. at 2364 (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)).  The Supreme Court characterized this approach as a "casual

disregard of the rules of statutory interpretation" due to the test's subordination of plain meaning to legislative history.  *Id.*

The threshold limitation for application of Exemption 5 is that it applies only to "intra-agency" or "inter-agency" records.  5 U.S.C. § 552(b)(5).  "The prefix 'intra' means 'within.'"  *Nat'l Inst. of Mil. Just. v. U.S. Dep't of Def.*, 512 F.3d 677, 688 (D.C. Cir. 2008) (Tatel, J., dissenting) ("*NIMJ*"); *accord Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 684 (9th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 472, 142 S. Ct. 753 (2022) (Wardlaw, J., dissenting in part) (citing *Intra*, Black's Law Dictionary (Rev. 4th ed. 1968) and *Intra*, Webster's Seventh New Collegiate Dictionary (1961)).  Congress also provided a definition of "agency" within the Act itself, first by cross-referencing the definition in the Administrative Procedure Act, 5 U.S.C. § 551(1), and then by specifying that FOIA's definition includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  Neither FOIA's definition of "agency" nor the text of Exemption 5 mention "consultants" or, indeed, any third parties, unlike other exemptions within the Act.  *Compare id.* § 552(b)(5), *with id.* § 552(b)(4) (referring to information "obtained from a person"), *and id.* § 552(b)(7)(D) (referring to information provided by confidential sources).

The "consultant corollary" doctrine is not the product of a close reading of FOIA's text.  Rather, as Judge Wardlaw of the Ninth Circuit recently explained, it originated in a footnote in this Court's 1971 decision in *Soucie v. David*.[3]  *See Rojas*, 989 F.3d at 685 (Wardlaw, J., dissenting) (citing *Soucie v. David*, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971)).  The rationale for the doctrine was (and has been since) protecting the quality of agencies' deliberations and decisions.

In *Soucie*, for example, this Court said the underlying "rationale" for Exemption 5 "indicates" that communications from third parties should be protected.  448 F.2d at 1078 n.44.  In *Ryan v. Department of Justice*, discussed in more detail below, this Court, in determining that some communications from Congress can be shielded under the doctrine, pointed to the "purpose" of Exemption 5, noting that "to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions."  617 F.2d 781, 789–90 (D.C. Cir. 1980).  And, similarly, in *Formaldehyde Institute v. Department of Health & Human Services*, this Court said that the "pertinent issue" is "what harm, if any, the [document's] release would do to [an agency's] deliberative process."  889 F.2d 1118, 1123–24 (D.C. Cir. 1989).  Thus, as then-Chief District Judge Lamberth has noted, in creating the "consultant corollary"

---

[3]      *Soucie* was decided three years before Congress added a definition of "agency" to FOIA.  *See* Pub. L. No. 93-502, 88 Stat. 1561 (1974), *available at* https://perma.cc/N5M6-VFX7.

doctrine, this "circuit chose to depart somewhat from the letter of the law in favor of a more functional approach to Exemption 5." *Jud. Watch, Inc. v. U.S. Dep't of Transp.*, 950 F. Supp. 2d 213, 216 (D.D.C. 2013) (citing *Soucie* and other early cases).

B.    <u>Decisions in this Circuit post-*Klamath* have created confusing and contradictory tests.</u>

The Supreme Court has never adopted the "consultant corollary" doctrine. Indeed, it has explicitly declined to do so. *See Klamath*, 532 U.S. at 3.  In *Klamath*, the Court noted that "neither the terms of the exemption nor the statutory definitions say anything about communications with outsiders." *Id.* at 9.  Instead, "the most natural meaning of the phrase 'intra-agency memorandum' is a memorandum that is addressed both to and from employees of a single agency." *Id.* (quoting *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 18 n.1 (1988) (Scalia, J., dissenting)).  The Court found "no textual justification for draining [Exemption 5's] first condition"—*i.e.*, that records must be either "inter-agency or intra-agency"—of its "independent vitality." *Id.* at 12.  And the Court emphatically rejected the implicit argument that "intra-agency" within Exemption 5 "is a purely conclusory term, just a label to be placed on any document the Government would find it valuable to keep confidential." *Id*.  Although the Court did not answer the ultimate question of whether the "consultant corollary" doctrine is viable, it specifically criticized two decisions from this Court, including *Ryan*, that it said

8

"arguably extend" its reach "beyond" what would normally be considered consultants.  *See id.* at 12 n.4.

As the district court noted below, the implications of *Klamath* for the "consultant corollary" doctrine have been "hotly debated."  *Am. Oversight, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. CV-17-827(EGS/DAR), 2022 WL 1719001, at *13 (D.D.C. May 27, 2022).  One member of this Court already concluded that *Klamath* "undermine[d] all of" this Circuit's prior cases applying the doctrine.  *NIMJ*, 512 F.3d at 689 (Tatel, J., dissenting); *see also Nat'l Inst. of Mil. Just. v. Dep't of Def.*, No. 06-5242, 2008 WL 1990366, at *2 (D.C. Cir. Apr. 30, 2008) (Tatel, J., concurring in the denial of rehearing en banc) (enumerating "serious misgivings about the continuing validity of our 'intra-agency' decisions in the post-*Klamath* era").  And, in view of *Klamath*, the Sixth Circuit has declined to adopt the "consultant corollary" doctrine, explaining that "Congress chose to limit [Exemption 5's] reach to 'inter-agency or intra-agency memorandums or letters,' not to 'memorandums or letters among agencies, independent contractors, and entities that share a common interest with agencies.'"  *Lucaj v. Fed. Bureau of Investigation*, 852 F.3d 541, 549 (6th Cir. 2017) (citations omitted).  More recently, a sharply divided Ninth Circuit, sitting en banc, sparred over *Klamath*'s meaning.  *Compare Rojas*, 989 F.3d at 674 (majority opinion) ("Although the [*Klamath*] Court did not endorse the consultant corollary, it distilled general

9

principles gleaned from lower court decisions that we think define the outer boundaries of Exemption 5's reach."), *with id.* at 688 (Wardlaw, J., joined by two other judges, dissenting in part) ("*Klamath* thus marked the first time that the Supreme Court addressed the full purpose of Exemption 5, and the Court there specifically warned against draining Exemption 5's 'intra-agency or inter-agency' requirement of 'independent vitality.'" (quoting *Klamath*, 532 U.S. at 12)).

Even as this Circuit has continued to apply the "consultant corollary" doctrine post-*Klamath*, as the district court below noted, there has been "substantial uncertainty" as to what it actually means. *See Am. Oversight, Inc.*, 2022 WL 1719001, at *13. District courts have "struggled somewhat to answer [the] question" of "what, if anything, *is* encompassed" by the doctrine. *Lawyers' Comm. for C.R. Under L. v. U.S. Dep't of Just.*, No. 18-CV-167 (EGS/GMH), 2020 WL 7319365, at *22 (D.D.C. Oct. 16, 2020), *report and recommendation adopted*, No. 18-CV-167 (EGS/GMH), 2021 WL 1197730 (D.D.C. Mar. 30, 2021) (emphasis in original); *see also Am. Oversight v. U.S. Dep't of Transp.*, No. CV 18-1272 (CKK), 2022 WL 103306, at *3 (D.D.C. Jan. 11, 2022) ("The Court of Appeals for the District of Columbia Circuit continues to apply the consultant corollary doctrine, but the degree to which the Court of Appeals has narrowed the doctrine in response to *Klamath* is uncertain."); *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 118 n.12 (D.D.C. 2012) (noting split among courts as to whether to

"invoke[] both factors identified by *Klamath* (self-interest and pursuit of government benefit)" versus looking "principally to the 'degree of self-interest' of the outside entity" (citations omitted)).  Some district courts have underscored "the important fact that the *Klamath* Court singled out [prior D.C. Circuit] opinions" as suggesting that Circuit precedent is on unclear footing.  *Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 380 F. Supp. 3d 45, 54 (D.D.C. 2019) (citing *Klamath*, 532 U.S. at 12 n.4); *see also Ctr. for Int'l Env't L. v. Off. of U.S. Trade Representative*, 237 F. Supp. 2d 17, 27 n.6 (D.D.C. 2002).  Others simply note that this Circuit has "continued to recognize the consultant corollary" doctrine, and try their best to make sense of the doctrine.  *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 161 F. Supp. 3d 120, 133 (D.D.C.), *modified*, 185 F. Supp. 3d 26 (D.D.C. 2016).

The district court's opinion in this case exemplifies just how murky the doctrine has become.  Purporting to rely on *Klamath*, the district court found that there are "two pivotal conditions" that trigger application of the "consultant corollary" doctrine: "(1) the outside party cannot provide self-interested advice to the agency, and (2) the agency must have solicited the advice from the party."  *Am. Oversight, Inc.*, 2022 WL 1719001, at *12 (citing *Klamath*, 532 U.S. at 10–11;

*NIMJ*, 512 F.3d at 680).[4]  But the district court below, like other district courts in this Circuit, struggled to settle on a benchmark for the first condition—*i.e.*, how much self-interest nudges a third party outside the scope of the "consultant corollary" doctrine.  *See Am. Oversight, Inc.*, 2022 WL 1719001, at *13 (collecting cases "as to whether an independent interest on the part of the consultant is now disqualifying").  Some district courts in this Circuit have held the third party must be "a neutral party who is not representing its own interests" in any way.  *Am. Oversight*, 380 F. Supp. 3d at 54 ("[I]t appears that the law in this Circuit does require that outside consultants lack an independent interest." (cleaned up)).  Other courts have found that some shared "common goals" are all that is required, such that "even if the consultant appears to be acting to foster its own interests, its actions might also be construed as aiding an agency process." *Jud. Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 112 (D.D.C. 2018) (citing *Formaldehyde Inst.*, 889 F.2d at 1124–25).  But regardless of the precise test chosen, all of these inquiries are difficult, if not impossible, to determine as a factual matter.  As one district court decision notes:

> Whether a person is self-interested in a particular situation is not a binary question.  Rather, self-interest exists on a spectrum, with altruism at one end and greed or avarice on the other.  The point at which selflessness passes into self-interest is not demarcated by a bright line.

---

[4]      As explained above, the *Klamath* Court explicitly declined to adopt the doctrine.  532 U.S. at 12.

*Competitive Enter. Inst.*, 161 F. Supp. 3d at 133 (D.D.C.).

The district court, below, also wrestled with the appropriate test for the second condition: whether the agency solicited advice from the non-agency third party. *Am. Oversight, Inc.*, 2022 WL 1719001, at *12–14; *see also McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*, 647 F.3d 331, 338 (D.C. Cir. 2011) (noting Circuit precedent requires that the agency have solicited the withheld material). This Court has stated that a consultant relationship "[t]ypically . . . is evidenced by the fact that the agency seeks out the individual consultants and affirmatively solicits their advice in aid of agency business." *NIMJ*, 512 F.3d at 686.  The district court below, however, found the legal standard to be much more amorphous; it instead looked to whether the records at issue were "part and parcel of the agency's deliberative process." *Am. Oversight, Inc.*, 2022 WL 1719001, at *15 (quoting *Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 575 (D.C. Cir. 1990)) (emphasis omitted).  Applying this far more fluid approach, the district court found it "irrelevant" whether the agency "initiated the contact." *Id.*

Adding to the confusion, at least two district courts in this Circuit have questioned whether—based on pre- and post-*Klamath* decisions from this Court— agency solicitation is even a requirement.  *See Jud. Watch, Inc.*, 950 F. Supp. 2d at 218–19 nn.3–4 (D.D.C. 2013) ("I do not read [D.C. Circuit] precedent as mandating agency solicitation for a communication to be 'intra-agency[.]'"); *Am.*

*Oversight v. U.S. Dep't of Treasury*, 474 F. Supp. 3d 251, 264 (D.D.C. 2020)

("[T]he Circuit does not mandate agency solicitation for a communication to be

'intra-agency.'" (cleaned up) (quoting *Jud. Watch, Inc. v. Dep't of Energy*, 412

F.3d 125, 130–31 (D.C. Cir. 2005))).  *But cf., e.g.*, *McKinley*, 647 F.3d at 338

(stating that "our precedent requires" a finding that the agency "solicited the

withheld material" for the "consultant corollary" doctrine to apply).

That such confusion and inconsistent caselaw has arisen out of the

"consultant corollary" doctrine is not surprising, given that the doctrine is not

grounded in the text of Exemption 5.  Because the plain text of that exemption

limits its scope to "inter-agency or intra-agency" communications and memoranda

it is, necessarily, silent both as to the appropriate quantum or nature of self-interest

on the part of a third party and to solicitation.  A rule "fabricated out of whole

cloth" and grafted onto a clear (and contradictory) statutory definition is almost

certain to result in confusion.  *Food Mktg. Inst.*, 139 S. Ct. at 2365 (cleaned up)

(citation omitted).

C.    The "consultant corollary" doctrine is incompatible with the plain text
       of Exemption 5.

Even setting aside the implications of *Klamath*, it has now been more than a

decade since this Court last considered the viability of the doctrine.  *See NIMJ*, 512

14

F.3d at 684.⁵  As noted above, in that intervening time, the Supreme Court issued two decisions wherein it "refused to alter FOIA's plain terms" and criticized similar judicial inventions as "relic[s] from a bygone era of statutory construction." *Food Mktg. Inst.*, 139 S. Ct. at 2364 (internal quotation marks omitted).  The Court has admonished lower courts to read FOIA's exemptions "through the simple device of confining the provision's meaning to its words," *Milner*, 562 U.S. at 572, and to give those words their ordinary meaning, *Food Mktg. Inst.*, 139 S. Ct. at 2362.

The "consultant corollary" doctrine flouts those recent Supreme Court rulings by "stretch[ing] Exemption 5's words to cover" third-party records when the plain text of the Act simply does not allow it.  *NIMJ*, 512 F.3d at 695 (Tatel, J., dissenting).  Indeed, the justification for the doctrine has always been policy, not text.⁶  *Compare id. and* 5 U.S.C. § 552(b)(5), *with Soucie*, 448 F.2d at 1078 n.44

---

⁵    In the two more recent cases before this Court involving the "consultant corollary" doctrine, the parties did not dispute its viability, but only its applicability to disputed records.  *See McKinley*, 647 F.3d at 336; *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202 (D.C. Cir. 2014).

⁶    In an oft-quoted footnote to a dissent in *Department of Justice v. Julian*, Justice Scalia asserted that some form of the "consultant corollary" doctrine was "textually possible," but he did not explain how or provide any support for that assertion.  Justice Scalia stated only that, in his view, it would be "much more in accord with the purpose of the provision."  486 U.S. at 18 n.1 (Scalia, J., dissenting) (emphasis added).

(relying on "[t]he rationale of the exemption" rather than its text); *Ryan*, 617 F.2d at 789–90 (interpreting Exemption 5 "in light of its purpose"); *Formaldehyde Inst.*, 889 F.2d at 1123–24.  In 2014, then-Judge Kavanaugh, writing for a unanimous panel of this Court, expressly noted as much, stating that the Court's "consultant corollary" precedent "go[es] beyond the text" of Exemption 5.  *Pub. Emps. for Env't Resp.*, 740 F.3d at 201.  In light of superseding Supreme Court caselaw, this type of judicial interpretation of a FOIA exemption, divorced from the Act's plain text, is no longer viable.  *Cf. Food Mktg. Inst.*, 139 S. Ct. at 2364.

In short, the issue here is that "Congress has not enacted the FOIA exemption the Government desires."  *Milner*, 562 U.S. at 581.  If the executive branch believes that Exemption 5 should be expanded as a policy matter to encompass some set of third-party records, then it must make that appeal to Congress, not the courts.  This panel can—and should—recognize that the Court's prior caselaw recognizing the "consultant corollary" doctrine has been superseded. *See In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003) ("[A] three-judge panel may always determine that a prior holding has been superseded, and hence is no longer valid as precedent without resorting to en banc endorsement[.]" (cleaned up) (citation omitted)).

## II. Even if the "consultant corollary" remains viable, it does not encompass communications between agencies and Congress.

Whatever may remain of the "consultant corollary" doctrine (if anything), it cannot plausibly apply to communications between agencies and members of Congress and Congressional staff.  Such an application of the doctrine is fundamentally incompatible with any reading of Exemption 5, since Congress is not—and cannot be—an "agency" within the meaning of the Act.

Exemption 5 applies only to "inter-agency or intra-agency memorandums or letters."  5 U.S.C. § 552(b)(5).  As discussed above, Congress added statutory definitions by amendment in 1974 to define a "record" as "any information that would be an <u>agency</u> record subject to the requirements of [FOIA]," 5 U.S.C. § 552(f)(2) (emphasis added), and an "agency" as including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency," 5 U.S.C. § 552(f)(1).  FOIA's definition of "agency" cross-references to the Administrative Procedure Act's definition, which clearly states that "agency" "does not include . . . Congress."  5 U.S.C. § 551(1)(A).  If Congress is expressly excluded from the definition of "agency" under FOIA, then communications between Congress and an agency cannot, *ipso facto*, be "intra-agency."

17

In 1980 this Court, applying the "consultant corollary" doctrine, held that Justice Department questionnaires filled out by Senators and returned to the agency qualified as "intra-agency" memoranda for the purposes of Exemption 5. *See Ryan*, 617 F.2d at 790. That decision was based on a perceived need to "accommodate the realities of the typical agency deliberative process"—not on FOIA's text. *Id.* To the contrary, the *Ryan* court rejected a plain-language reading of the term "intra-agency," stating (without citation) that "Congress apparently did not intend 'inter-agency' and 'intra-agency' to be rigidly exclusive terms." *Id.* And though the *Ryan* court called this a "common sense interpretation," *id*., the Supreme Court has since clarified that this type of atextual approach is a no longer acceptable "relic from a bygone era of statutory construction." *Food Mktg. Inst.*, 139 S. Ct. at 2364 (internal quotation marks omitted). A reading of Exemption 5 that elevates even "common sense" policy considerations[7] over text—like that in *Ryan*—cannot be valid under the Supreme Court's contemporary FOIA jurisprudence. *See Milner*, 562 U.S. at 566 (citation omitted).

Plaintiff-Appellant's brief argues that *Ryan* does not control the outcome of this case. *See* Br. for Appellant American Oversight at 35–36. But regardless of

---

[7]     It is far from obvious that the "consultant corollary" is, in fact, better policy or "common sense"; Congress made a valid (and also, arguably, commonsensical) policy choice to limit Exemption 5's scope to inter- or intra-agency records when it crafted the exemption.

whether it would apply or control here, *Ryan* is no longer good law and illustrates the hazards of a non-textual approach to Exemption 5. Compare this Court's decision in *Dow Jones & Co.*, which (correctly) applied the plain text of Exemption 5 to hold that communications from an agency to Congress are not "inter-agency" because "Congress is simply not an agency." 917 F.2d at 574 (emphasis added). Attempting to reconcile its holding with the outcome in *Ryan*, the Court in *Dow Jones* posited that communications from Congress <u>to</u> an agency protect the agency's deliberative process, and thus are "intra-agency" for purposes of Exemption 5; but communications <u>from</u> an agency to Congress are not "intra-agency" because courts have not recognized the importance of protecting "deliberations of a non-agency." *See id.* at 575 (emphasis removed). Even setting aside the textual problems with that analysis, Congress cannot be deemed an "agency" sometimes and not an "agency" other times for purposes of the Act. And, more fundamentally, this approach ignores the plain text of Exemption 5's threshold requirement, and there is "no textual justification for draining th[at] first condition of independent vitality." *Klamath*, 532 U.S. at 12.

Klamath strongly suggests that—assuming the "consultant corollary" doctrine is viable in any form—whatever the outer bands of that doctrine may be, this Court's decision in *Ryan* transgressed them. The Supreme Court expressly pointed to the outcome in *Ryan* as "arguably extend[ing]" the doctrine "beyond"

the "typical examples" of consultant relationships. *Klamath*, 532 U.S. at 12 & n.4.

Notably, the Court based its skepticism of the outcome in *Ryan* on its reasonable

"expect[ation that] a Senator [would] have strong personal views on the matter" of

judicial nominations. *Id.* As with judicial nominees, one also would expect

Senators and their staff to have "strong personal views" on pending legislation—

the underlying substance of the disputed records in this case—and, indeed, on

many (if not most) other subjects that they might communicate with executive

branch agencies about.

The "consultant corollary" doctrine is often justified on the grounds that

certain third parties "may stand in the shoes of fellow agency employees, when

they have been specifically asked to provide input from a neutral perspective."

*Am. Oversight*, 380 F. Supp. 3d at 55. But no reasonable view of the role of a

member of Congress would make them the functional equivalent of an executive

branch agency employee. *See generally* U.S. Const. arts. I, II. To be sure,

members of Congress and their staff necessarily communicate with agencies (and

vice versa), but they do not stand in each other's shoes. On the contrary,

"Congress and the President have an ongoing institutional relationship as the

'opposite and rival' political branches established by the Constitution." *Trump v.

Mazars USA, LLP*, 140 S. Ct. 2019, 2033–34 (2020) (quoting The Federalist No.

51 (James Madison)). To determine, in the context of FOIA, that members of

20

Congress or their staff function as employees of the executive branch when providing information, but as legislative branch employees when receiving information, is not only foreclosed by the plain text of the Act, but also is unsupported by any "common sense" interpretation of Exemption 5.

Noting the Supreme Court's criticism of *Ryan*, in 2008 a panel majority of this Court determined it was not required, at that time, to make a decision as to whether *Ryan* "*may* have extended Exemption 5 beyond its permissible scope." *NIMJ*, 512 F.3d at 685 (emphasis in original). Judge Tatel's dissenting opinion, however, maintained that *Klamath* "eviscerates the reasoning in the *Ryan* line of cases," and that the Supreme Court not only "clearly undermine[d]" but entirely "jettisoned our binding circuit precedent" regarding the "consultant corollary" doctrine. *Id.* at 694 (Tatel, J., dissenting) (cleaned up) (citations omitted). Since *NIMJ,* this Court has not addressed *Ryan*.

Whether it looks to *Klamath*, or simply applies a plain text reading of Exemption 5 as informed by the Supreme Court's superseding decisions in *Milner* and *Food Marketing Institute*, this Court can and should take this opportunity to make clear that the "consultant corollary" doctrine, at minimum, does not extend to communications between separate branches of government.

21

## <u>CONCLUSION</u>

For the reasons herein, *amicus* Reporters Committee respectfully urges the

Court to reverse the district court's decision as to Defendants-Appellees'

Exemption 5 withholdings.

 Dated:  February 21, 2023

Respectfully submitted,

 */s/ Bruce D. Brown*
Bruce D. Brown
      *Counsel of Record*
Katie Townsend
Adam A. Marshall
Shawn Musgrave*
REPORTERS COMMITTEE FOR
      FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
bruce.brown@rcfp.org
*Counsel for Amicus Curiae*
**Of counsel*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 4,961 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  February 21, 2023
       Washington, D.C.         */s/ Bruce D. Brown*

                                   Bruce D. Brown
                                   *Counsel for Amicus Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 21, 2023, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system.  Plaintiff-Appellant and Defendants-Appellees are registered CM/ECF users, and service upon them will be accomplished by the appellate CM/ECF system.

/s/ Bruce D. Brown
Bruce D. Brown
*Counsel for Amicus Curiae*

Dated: February 21, 2023